1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

LEE E. GRADY,

11
                              Plaintiff,

CASE NO.      C07-5194RJB

12
        v.

REPORT AND
RECOMMENDATION

13
MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

Noted for April 4, 2008

14
15
                              Defendant.

16
17

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §

18
636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.

19
v. Weber, 423 U.S. 261 (1976).  This matter has been briefed, and after reviewing the record, the

20
undersigned recommends that the Court affirm the Administration's final decision for further

21
consideration.

22
### FACTUAL AND PROCEDURAL  BACKGROUND

23
        Plaintiff, Lee Grady, was born in 1958.  He completed the 11th grade and obtained his GED while

24
in military service. He was last regularly employed by Summit Windows in Kent, where he operated saws

25
that cut bars for windows.  Tr. 308.   The company went bankrupt in March of 2001 and he lost his job.

26
Tr. 309. He allegedly became disabled due to back pain that prevented him from performing a short term

27
landscaping job following his job at Summit Windows.  He was fired from the landscaping job for being

28
unable to perform the work due to back, neck and shoulder pain with dizziness and loss of equilibrium.

1  Tr. 310.

2      Mr. Grady went to the VA in Tacoma to find out why he was having the symptoms and he was

3  diagnosed with thyroid problems which caused the pain and dizziness and was affecting his kidneys.

4  Plaintiff filed applications for Disability (DIB) and Supplemental Security (SSI) benefits on March 16,

5  2004.  He alleged disability since November 15, 2001, based on back and heart problems, migraines, and

6  his thyroid (Tr. 16, 49-51, 111, 275-7).  After the applications were denied initially and upon

7  reconsideration, plaintiff requested an ALJ hearing. Tr. 38-48, 278-81. This hearing occurred on August

8  8, 2006. On September 19, 2006, the ALJ issued a decision finding plaintiff not disabled because he can

9  perform certain types of light work.  Tr. 16-24.  After the Appeals Council declined review, the ALJ's

10  decision became the Administration's final decision.  Tr. 5-7.

11      Plaintiff now brings the instant action pursuant to 205(g) of the Social Security Act ("the Act"), as

12  amended, 42 U.S.C. § 405(g), to obtain judicial review of the defendant's final decision denying plaintiff's

13  application for disability insurance benefits.  Plaintiff specifically contends: (1) the ALJ failed to properly

14  assess the medical opinion of an examining physician; (2) the ALJ relied on medical evidence that was

15  not substantial; (3) the ALJ failed to properly credit lay witness testimony or statements; (4) the ALJ

16  failed to properly assess Plaintiff's credibility; (5) the ALJ's failed to include all of Plaintiff's limitation's

17  in his assessment of Plaintiff's residual functional capacity (RFC);  and (6) the ALJ's hypothetical

18  question posed to the Vocational Expert was incomplete.

19                                    **DISCUSSION**

20      The Commissioner's decision must be upheld if the ALJ applied the proper legal standard and the

21  decision is supported by substantial evidence in the record.  Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th

22  Cir. 1992); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such

23  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v.

24  Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a

25  scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

26  1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than

27  one rational interpretation, this Court must uphold the Commissioner's decision.  Allen v. Heckler, 749

28  F.2d 577, 579 (9th Cir. 1984).

1    The burden is on the claimant to prove that she is disabled within the meaning of the Social

2    Security Act. *See* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Disability is the "inability to

3    engage in any substantial gainful activity by reason of any medically determinable physical or mental

4    impairment which can be expected to result in death or which has lasted or can be expected to last for a

5    continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 423(d)(1)(A). For

6    disability insurance benefits purposes, Plaintiff has the burden of showing disability prior to the

7    expiration of his insured status (here, Plaintiff's date last insured or DLI is December 31, 2005, (Tr. 16,

8    54)).  A claimant is disabled only if his impairments are of such severity that he is not only unable to do

9    his previous work but cannot, considering age, education, and work experience, engage in any other

10   substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c (a)(3)(B).

11   In the case at hand, the ALJ applied the five-step sequential evaluation process for determining

12   whether a claimant is disabled.  20 C.F.R. § 416.920.  At step one, the ALJ found that Plaintiff had not

13   engaged in substantial gainful activity since his alleged onset date of disability of November 15, 2001 (Tr.

14   18).  20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b).  At step two, the ALJ found that Plaintiff had severe

15   impairments of degenerative disc disease and headaches (Tr. 18).  The ALJ also found that Plaintiff's

16   hypothyroidism was not severe, that he did not have a severe heart impairment, and that his diarrhea was

17   not a severe condition (Tr. 374). 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  At step three, the ALJ found

18   that Plaintiff's impairments, alone or in combination, did not meet or equal the requirements of a listed

19   impairment (Tr. 19). 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).  The ALJ determined that Plaintiff had

20   retained the following residual functional capacity (RFC): to lift and/or carry 20 pounds occasionally and

21   10 pounds frequently, to sit and to stand and/or walk for a total of 6 hours in an 8 hour workday, with no

22   limitations with regarding to pushing or pulling the above amounts, and that he must be able to sit or

23   stand as needed to relieve discomfort (Tr. 19).  20 C.F.R. §§ 416.920(e), 416.945.  At step four, the ALJ

24   found that Plaintiff was unable to perform any of his past relevant work (Tr. 22). 20 C.F.R. §§

25   416.920(a)(4)(iv), 416.920(f).  At step five, relying upon vocational expert testimony, the ALJ found that

26   the ALJ found that Plaintiff could perform other working existing in significant numbers in the national

27   economy as a parking lot attendant and an assembler (Tr. 23).  20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

28   Thus, the ALJ concluded Mr. Grady was not disabled.

1    *A.  THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

2         The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d

3    1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

4    experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

5    contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

6    and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

7    722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

8    substantial evidence that justifies the rejection of the opinion of either an examining physician or a

9    treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881

10   F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of  a treating physician's

11   opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the

12   ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from

13   the claimant that conflicted with the treating physician's opinion.

14        Here, Plaintiff argues the ALJ failed to properly incorporate or address the opinion of examining

15   physician Dr. Brion.  Plaintiff was examined by Dr. Brion on July 19, 2004.  During the examination, Dr.

16   Brion conducted a physical exam for disability and reviewed x-ray and electrodiagnostic studies from

17   January and March, 2004.  Tr. 175-178. Dr. Brion noted that plaintiff has a slow antalgic gait with

18   favoring on the right leg and only fair balance with the left leg. He diagnosed chronic thoracic pain with a

19   history of old compression fracture accompanied by chronic pain syndrome; very limited performance of

20   ADL's; migraine headaches improved with medication; history of coronary artery disease; and

21   Hypothyroidism, controlled. Dr. Brion noted that plaintiff is probably able to do sedentary work where he

22   could change position frequently and is not required to lift over 10 pounds. Tr. 178.  Dr. Brion stated,

23   "[Plaintiff's] pain complaints are out of proportion to the history and physical exam findings", and

24   "[Plaintiff] is deconditioned and he needs help to get out of the chronic pain vicious cycle. Treatment in

25   an interdisciplinary pain program will be helpful."  Tr. 175-6.  Plaintiff argues the ALJ improperly

26   rejected this opinion.

27        A review of the ALJ's decision and the medical evidence, as a whole, does not support Plaintiff's

28   position.  The ALJ stated that "[a]s for the opinion evidence, I note that Dr. Brion limited the claimant to

1  lifting 10 pounds at most, but the doctor also attributed the claimant's limitations to some degree to

2  deconditioning. *See* Ex 2F/2.  I noted that deconditioning is not a medically determinable impairment and,

3  much like body habitus, it is thus not a condition that we take into consideration when assessing a

4  claimant's residual functional capacity. *See* S.S.R. 96-8p" (Tr. 21).

5        The ALJ properly rejected Dr. Brion's opinion that Plaintiff was limited to lifting 10 pounds and

6  limited to only sedentary type work.  The ALJ's statement that Dr. Brion attributed Plaintiff's limitations

7  to some degree to deconditioning is supported by Dr. Brion's statements in his report and a reasonable

8  interpretation of Dr. Brion's report.  More significantly, the ALJ clearly relied on other substantial

9  medical evidence that is contrary to Dr. Brion's opinion regarding Plaintiff's ability to work, including

10  the opinion of Dr. Reasol, another examining physician.

11        Dr. Reasol examined Plaintiff in connection with his DSHS claim on March 22, 2006, (Tr. 22,

12  234-237). Dr. Reasol noted that Plaintiff had limited abduction of both shoulders due to pain, limited

13  flexion of both shoulders due to pain, limited range of motion of his back (thoracic-lumbo-sacral-spine)

14  due to pain, and limited hip flexion due to pain (Tr. 235).  Dr. Reasol diagnosed Plaintiff with chronic

15  neck, back pain status post motor vehicle accident, which he assessed: at severity rating of 4 in terms of

16  affecting Plaintiff's work activities of prolong sitting, lifting, and carrying heavy loads; at a severity

17  rating of 3 in terms of affecting Plaintiff's work activity of prolonged standing; and at a severity rating of

18  2-3 in terms of affecting Plaintiff's work activity of prolonged walking (Tr. 236). Dr. Reasol also

19  diagnosed Plaintiff with hypothydroism and gastroesophageal reflux disease (GERD), which he opined

20  did not cause any effect on Plaintiff's work activities, and with chronic headaches, intermittent, which he

21  assessed at a severity rating of 2, which affected Plaintiff's work activities of communicating, and

22  understanding or following directions (Tr. 236). On the form completed by Dr. Reasol, a severity rating of

23  2 is defined as "mild" severity, meaning no significant interference with the ability to perform basic

24  work-related activities (Tr. 236). A severity rating of 3 is defined as "moderate" severity, meaning

25  significant interference with the ability to perform one or more basic work-related activities (Tr. 236). A

26  severity rating of 4 is defined a "marked" severity, meaning very significant interference with the ability

27  to perform one or more basic work-related activities (Tr. 236).  Dr. Reasol opined that Plaintiff's overall

28  work level was for light work (which includes the ability to lift more than 10 pounds (Tr. 236).

Clearly, Dr. Brion's July 2004 exam and opinion that Plaintiff is only able to lift 10 pounds and do sedentary work is at odds with the March 2006 opinion of Dr. Reasol. The ALJ stated that his RFC and medical assessment was consistent with Dr. Reasol's opinion (Tr. 22), and as noted above, the ALJ is entitled to resolve conflicts in medical testimony, not the court. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). Accordingly, the ALJ did not err when he reviewed the medical evidence, accepted the opinion of Dr. Reasol and rejected the opinion of Dr. Brion.

**B.    *THE ALJ PROPERLY WEIGHED PLAINTIFF'S CREDIBILITY AND CONSIDERED THE LAY WITNESSES' STATEMENTS***

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (*en banc*), is controlling Ninth Circuit authority on evaluating plaintiff's subjective complaints of pain. Bunnell requires the ALJ findings to be properly supported by the record, and "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)). Similarly, the ALJ can reject the testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he rejects. Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ stated that after considering the evidence of record, he found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible (Tr. 20). The ALJ rejected Plaintiff's subjective complaints based in part on Dr. Brion's observation that Plaintiff's pain complaints were "out of proportion to the history and physical exam findings" (Tr. 20). In addition, the ALJ The ALJ also found Plaintiff's subjective complaints not entirely credible because Plaintiff's activities showed that he functioned at a higher level than he asserted (Tr. 20). The ALJ stated, for example, that Plaintiff alleged that his disability begin in November 2001; however, he reported that he was doing some heavy lifting while working on a truck in April of 2002 (Tr. 20, 49, 203, 275). The ALJ concluded that "[c]learly, if his condition was debilitating due to large part to a spinal condition in November of 2001, he would not consider heavy lifting 5 months later" (Tr. 20,

111). Furthermore, the ALJ noted that Plaintiff had been less than forthright in his reports about substance abuse (Tr. 20). The ALJ noted that in April of 2002, Plaintiff had claimed, when first asked, to be clean and sober but on further questioning, however, he admitted that he drank two drinks of hard liquor daily, obtained some morphine "on the street" and took it for his pain complaints, and smoked one marijuana cigarette per day (Tr. 20, 203). The ALJ consequently concluded that "[t]his information, and particularly the claimant's willingness to keep it from his doctor on initial questioning, implies a motive for him to exaggerate or overstate his complaints of pain, namely, the hope of obtaining continued pain medications. This therefore sheds doubt on the claimant's overall credibility" (Tr. 20).

In sum, the ALJ provided clear and convincing reasons to reject Plaintiff's subjective complaints as not entirely credible (Tr. 20-21).

With regard to the lay witness statements, the ALJ properly addressed those as well. The ALJ noted that Ms. Grady, Plaintiff's mother, reported that Plaintiff experienced frequent backaches and headaches, had to change positions frequently, especially when sitting, and had to lie down when his headaches were bad (Tr. 21, 162-164), and that Ms. Crossley, Plaintiff's sister, made similar statements. The ALJ wrote:

> I have no reason to doubt [Ms. Grady's] statement; however, I note that she did not give any indication of the claimant's functional limitations, such as the amount of weight he could lift or how long he could stand and/or walk before resting. See 96-8p (explaining that our inquiry requires a function by function analysis of the claimant's abilities). I have also considered the statement of the claimant's sister, Debra Crossley, who submitted a statement in October of 2004. Ms. Crossley could not answer many of the questions asked on the form, but she did estimate that the claimant was able to lift from 5 to 30 pounds, stand for 30 minutes, walk for 200 feet, sit for 30 minutes, and climb 2-3 flights of stairs. She reported that the claimant could not kneel or squat very well and had a ringing in his ears. Ex. 6E/6. Ms. Crossley also opined that the claimant was unable to hold a job. See Ex 6E/8. I have found abilities very near those alleged by Ms. Crossley, aside from her ultimate conclusion that the claimant is unable to work, which is reserved to me alone. See S.S.R. 96-5p.

(Tr. 21).

Here, because Ms. Grady did not give any relevant indication of Plaintiff's functional limitations on his ability to work as a result of his impairments and related symptoms that needed to be considered in the ALJ's function by function assessment of his abilities besides those determined by the ALJ, this was a germane reason for the ALJ to reject her lay witness statement. The ALJ accepted Ms. Crossley's lay statement of Plaintiff's abilities to the extent that his formulation of Plaintiff's RFC found abilities very

1    near those alleged by Ms. Crossley and he provided germane reasons for rejecting her opinion that

2    Plaintiff was unable to work (Tr. 21).

3          The ALJ did not err when he assessed Plaintiff's credibility nor when he weighed the lay witness

4    statements.

5    **C.  THE ALJ PROPERLY ASSESSED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

6          "[R]esidual functional capacity" is "the maximum degree to which the individual retains the

7    capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404,

8    Subpart P, App. 2 § 200.00(c) (emphasis added).  In evaluating whether a claimant satisfies the disability

9    criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R.

10   § 404.1512(a). The regulations further specify:  "When we assess your physical abilities, we first assess

11   the nature and extent of your physical limitations and then determine your residual functional capacity for

12   work activity on a regular and continuing basis." Id. at § 404.1545(b). Plaintiff asserts that the ALJ did

13   not properly determine his RFC because he maintains that the ALJ failed to assess whether Plaintiff was

14   capable of working on a regular and continuing basis for 8 hours a day, 5 days a week.

15         The undersigned is not persuaded by Plaintiff's argument.  As noted above, the ALJ found that

16   Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently (Tr. 19).  In addition,

17   the ALJ also found that Plaintiff was able to sit and to stand and/or walk for a total of 6 hours in an 8 hour

18   workday (Tr. 19). The ALJ further found that Plaintiff had no limitations with regard to pushing or

19   pulling the above amounts (Tr. 19), which necessarily means that he could perform this activity without

20   restriction during an 8 hour day. The ALJ also found that Plaintiff must be able to sit or stand as needed to

21   relieve discomfort (Tr. 19).  Clearly, the ALJ assessed Plaintiff's RFC based on a normal 8 hour workday

22   and 5 day work week (Tr. 19).  To a large extent Plaintiff's argument that the ALJ failed to properly

23   assess Plaintiff's RFC is based on the premise that the ALJ failed to properly consider the medical

24   evidence, Plaintiff's credibility, and the lay witness statements.  As discussed above, the court does not

25   find any error in the ALJ's analysis.  Accordingly, the ALJ's RFC assessment accurately reflects

26   Plaintiff's limitations and is based on substantial evidence within the record.

27   **D.    SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S STEP FIVE FINDING THAT PLAINTIFF
         COULD PERFORM OTHER WORK**

28
           At step-five of the administrative process the burden of proof shifts from the claimant to the

Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that Plaintiff could perform in light of his age, education, work experience, and residual functional capacity.  *See* Tackett v. Apfel,180 F.3d 1094,1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995).  In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Here the ALJ properly relied on the testimony of the vocational expert.  Based on that testimony, the ALJ found that Plaintiff could perform work as a parking lot attendant and an assembler (Tr. 23, 330-331).  Plaintiff argues the reliance on the vocational expert was improper, but this argument is similarly based on the premise that the ALJ failed to include all of Plaintiff's limitations and impairments in the hypothetical posed to the vocational expert.  As discussed above, the ALJ did not err when he assessed Plaintiff's RFC, and the ALJ's hypothetical posed to the expert reflected that RFC.  Accordingly, the expert's testimony constitutes substantial evidence that supports the ALJ's finding that Plaintiff could perform other work existing in significant numbers in the national economy and therefore was not disabled within the meaning of the Social Security Act.

<u>CONCLUSION</u>

Based on the foregoing, the Court should AFFIRM the administration's decision.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 4, 2008**, as noted in the caption.

DATED this 10th day of March, 2008.

*/s/ J. Kelley Arnold*
J.  Kelley Arnold
U.S. Magistrate Judge