UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEE E. GRADY,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

              Defendant.

CASE NO.     C07-5194RJB

ORDER ADOPTING REPORT
AND RECOMMENDATION

      This matter comes before the Court upon the Report and Recommendation of Judge J. Kelley Arnold, United States Magistrate Judge. Dkt. 24. The Court has considered the Report and Recommendation (Dkt. 24), Plaintiff's Objections to the Report and Recommendation of Magistrate Judge (Dkt. 25), and the file herein.

## I.    FACTS

      The procedural history and basic facts are related in the Report and Recommendation and shall not be repeated here. After the Report and Recommendation was issued, Plaintiff filed objections arguing that: a) the Administrative Law Judge's ("ALJ") erred by assigning considerable weight to an unsigned form which the ALJ mistakenly assumed was completed by an agency physician and erroneously rejected the opinions of Dr. Brion in favor of a DSHS physician who did not review Plaintiff's medical records, b) the ALJ erred by rejecting the lay witnesses' statements, c) the ALJ's assessment of Plaintiff's credibility was improper, d) the ALJ's did not accurately assess Plaintiff's residual functional capacity ("RFC"), and e) the ALJ's determination that Plaintiff was capable of other employment was in error. Dkt. 25.

## II.   DISCUSSION

This Court must uphold the Commissioner's determination that the Plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

### A.   ALJ'S EVALUATION OF THE MEDICAL RECORD

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  Id. at 830-31; Tonapetyan, 242 F.3d at 1149.  The following is a discussion of the medical records Plaintiff argues were not properly considered by the ALJ.

Plaintiff was seen by Arnel M. Brion, M.D., on July 19, 2004.  Tr. 175.  Dr. Brion saw Plaintiff for a Social Security Disability evaluation.  Id.  Plaintiff reported back pain and headaches as his chief complaint.  Id.  Dr. Brion noted that Plaintiff "displayed pain behavior constantly touching his back and his hip."  Id.  Dr. Brion observed that Plaintiff had fair balance standing on one leg, and is lumbar range of motion was 70 degrees flexion, 10 degrees extension, 15 degrees lateral flexion to either side.  Id.  Plaintiff was observed as having good strength in the lower extremities.  Id.  Palpation of the back muscles was unremarkable.  Id.  Dr. Brion noted that Plaintiff described very limited performance of activities of daily living.  Id.  Plaintiff's shoulder movements were within functional limits.  Id.

Dr. Brion's impression was that Plaintiff had chronic thoracic pain, and had developed a chronic pain syndrome.  Id.  Dr. Brion additionally diagnosed Plaintiff with migraine headaches, which improved with Propranolol, a history of coronary artery disease with no cardiac symptoms at that visit, and with hypothyroidism, controlled with medications.  Tr. 176.  Dr. Brion opined that Plaintiff was independent with mobility, and reported receiving help with his activities of daily living from his mother.  Id.  Dr. Brion

1  stated that he was "uncertain how much he can actually do by himself." Id. He noted that Plaintiff's "pain

2  complaints [were] out of proportion to the history and physical exam findings." Id. Dr. Brion observed

3  that Plaintiff was deconditioned and needed help getting out of the chronic pain "vicious cycle." Id. He

4  opined that treatment in an interdisciplinary pain program would be helpful. Id. Dr. Brion noted that

5  Plaintiff had good use of both hands and opined that he could probably do some type of sedentary work

6  that allowed him to frequently change positions. Id.

7      The record contains a Physical Residual Functional Capacity Assessment form, (Tr. 167-174),

8  dated October 13, 2004, which does not appear to be signed by medical doctor. The form limited

9  Plaintiff's ability to lift and or carry weight to 10 pounds on a frequent basis. Tr. 168.

10     Plaintiff was seen by Jose Jeffrey T. Reasol, M.D. on March 22, 2006. Tr. 234-239. Dr. Reasol

11  observed that Plaintiff had limited abduction and flexion of both shoulders, secondarily to pain, limited

12  range of motion in his back, and limited hip flexion. Tr. 235. Dr. Reasol diagnosed Plaintiff with chronic

13  neck and back pain which had a marked affect on his ability to sit for prolonged periods and his ability to

14  lift heavy loads. Tr. 236. The form defines "marked" as a "very significant interference with the ability to

15  perform one or more basic work-related activities." Id. Dr. Reasol opined Plaintiff's back and neck

16  impairments moderately affected his ability to stand for prolong periods and mildly to moderately affected

17  his ability to walk for prolong periods. Id. The form defines "moderate" as "significant interference with

18  the ability to perform one or more basic work related activities" and "mild" as "no significant interference

19  with the ability to perform basic work related activities." Id. Dr. Reasol opined that although Plaintiff had

20  Hypothyroidism and GERD (Gastroesophageal reflux disease), these impairments did not affect his ability

21  to engage in work related activities. Id. Dr. Reasol diagnosed Plaintiff with intermittent chronic headaches

22  which he opined had a mild affect on his ability to communicate, and understand or follow directions. Id.

23  Dr. Reasol opined Plaintiff could engage in "light work" which included the ability to " lift 20 pounds

24  maximum and frequently lift and/or carry up to 10 pounds." Id. "Light work" also included the ability to

25  walk or stand up to six out of eight hours per day, or sit most of the time with occasional pushing and

26  pulling of arm and/or leg controls. Id. Dr. Reasol stated that at the time of examination, "patient has

27  abnormal findings on his shoulders, back and hips." Tr. 237. He opined that Plaintiff had "possible

28  pathology with his vertebrae, however, [without] MRI/CT scan reports, [he couldn't] really tell [without ]

ORDER
Page - 4

1   pathology [unreadable].  Suggest reviewing reports from VA hospital."  Id.

2         Plaintiff first assigns error to the ALJ's reliance on the October 13, 2004 form in accessing

3   Plaintiff's impairments and resulting limitations.  Dkt. 25.  The ALJ did err in relying on the form.  The

4   form does not contain the signature of a licensed physician.  Tr. 174.  Consequently, it does not come from

5   an acceptable medical source.  See 20 C.F.R. § 404.1513(a), (d), and § 416.913(a), (d) (acceptable medical

6   sources include licensed physicians).  However, the error was harmless, as the ALJ did not, in fact, adopt

7   the findings and limitations found in the form.  For example, the form stated that Plaintiff could not lift

8   over 10 pounds (Tr. 168), yet the ALJ found that he had the RFC to lift and/or carry 20 pounds

9   occasionally and 10 pounds frequently (Tr. 19).  The ALJ's reliance on the form, to the extent that he did,

10  was harmless error.

11        Plaintiff then assigns error to the ALJ's treatment of Dr. Brion's opinion.  Dkt. 25.  Plaintiff first

12  argues that the ALJ's reasoning for rejecting Dr. Brion's opinion that Plaintiff could only lift 10 pounds

13  was improper.  The ALJ stated that he adopted the findings of Dr. Reasol regarding Plaintiff's limitations.

14  Tr. 22.  Dr. Reasol opined that Plaintiff had the ability to lift 20 pounds. Tr. 236.  Where an examining

15  physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons

16  that are supported by substantial evidence in the record."  Lester at 830-31.  The ALJ stated that he

17  rejected Dr. Brion's opinion that Plaintiff could only lift 10 pounds because the doctor "attributed the

18  claimant's limitations to some degree to deconditioning," then noted that "deconditioning [was] not a

19  medically determinable impairment," and deconditioning was not a condition that is taken into

20  consideration when assessing a claimant's RFC.  Tr. 21.  The ALJ did not err in rejecting Dr. Brion's

21  opinion on Plaintiff's lifting abilities.  Dr. Brion did note that Plaintiff was deconditioned.  Tr. 176.  The

22  fact that Plaintiff had a conditioned response to not lifting weight is not indicative of whether Plaintiff

23  could lift the weight.  Plaintiff has not shown that this was not a "specific and legitimate reason" to support

24  rejection of Dr. Brion's opinion of Plaintiff's ability to lift weight.

25        Plaintiff argues that the ALJ erred in ignoring the diagnosis of a pain syndrome.  Dkt. 25.  "The

26  mere existence of an impairment is insufficient proof of a disability," let alone a decreased ability to work.

27  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).  The ALJ did not err in failing to mention this

28  diagnosis, as he considers Plaintiff's pain in his assessment of Plaintiff's RFC where he finds that the

1   Plaintiff must be able to sit or stand as needed to relieve discomfort.  Tr. 19.  Plaintiff also argues that the

2   ALJ ignored the diagnosis of migraine headaches, and as such committed error.  Dkt. 25.  However, the

3   ALJ found that Plaintiff's headaches was a severe impairment at step two of the sequential analysis.  Tr.

4   18.  Plaintiff does not point to any medical evidence which supports his argument that he has a decreased

5   ability to work as a result of his headaches.  Moreover, Dr. Brion found that Plaintiff's headaches were

6   improved with medication.  Tr. 176.  Plaintiff complains about the ALJ's ignoring Dr. Brion's opinion that

7   Plaintiff could perform only sedentary work with change of positions.  Dkt. 25.  The ALJ properly rejected

8   Dr. Brion's opinion regarding Plaintiff's ability to carry 10 pounds as above, finding him capable of

9   carrying 20 pounds.  Tr. 19.  The ALJ incorporated Dr. Brion's and Dr. Reasol's opinions that Plaintiff

10   would need to be able to change positions in his RFC.  Tr. 19.  Plaintiff does not point to other changes in

11   the RFC that were assessed by Dr. Brion that would be required.  The ALJ did not commit error in his

12   treatment of Dr. Brion's opinion.

13          Lastly, Plaintiff assigns error to the ALJ's reliance on Dr. Reasol's opinion because Dr. Reasol

14   stated that "he did not have any records to review the pathology of Plaintiff's limitations and he was

15   apparently unaware of the diagnosed pain disorder."  Dkt. 25.  The ALJ did not err in his treatment of Dr.

16   Reasol's assessment.  Dr. Reasol opined that Plaintiff had "possible pathology with his vertebrae, however,

17   [without] MRI/CT scan reports, [he couldn't] really tell [without ] pathology [unreadable].  Suggest

18   [unreadable] reports from VA hospital."  Tr. 237.  It appears that Dr. Reasol did review some medical

19   evidence because he filled out a section in his report entitled "history."  Tr. 235.  Moreover, Dr. Reasol

20   was aware of Plaintiff's pain, as the limitations he opined Plaintiff had were based upon Plaintiff's pain.  Tr.

21   235-236.  The ALJ did not err in his treatment of the medical evidence.  Plaintiff has not shown that the

22   Report and Recommendation should not be adopted based upon the medical evidence.

23          **B.      ASSESSMENT OF LAY WITNESS TESTIMONY**

24          According to 20 C.F.R. 404.1513(e)(2), the Commissioner will consider observations by non-

25   medical sources about how impairments affect a claimant's ability to work.  Smolen v. Chater, 80 F.3d

26   1273, 1288 (9th Cir. 1996).  "[T]he ALJ can reject the testimony of lay witnesses only if he gives reasons

27   germane to each witness whose testimony he rejects."  Id. (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th

28   Cir. 1993)).

Plaintiff argues that the ALJ improperly rejected the testimony of Mrs. Grady, Plaintiff's mother. Dkt. 25.  In reviewing this witness's testimony the ALJ stated that Mrs. Grady reported in March of 2006 that Plaintiff experienced frequent backaches and headaches.  Tr. 21.  The ALJ related that Mrs. Grady reported that Plaintiff "had to change positions frequently, especially when sitting, and had to lie down when his headaches were bad."  Id.  The ALJ stated that he had "no reason to doubt this witnesses's statement; however, [he noted] that she did not give any indication of the claimant's functional limitations, such as the about of weight he could lift or how long he could stand and/or walk before resting."  Id.  The ALJ did not err in his treatment of Mrs. Grady's testimony.  He included Plaintiff's backaches and headaches in the impairments that he found to be severe at step two of the sequential analysis.  Tr. 18.  At step four, his RFC assessment included Mrs. Grady's observation that Plaintiff would have to frequently change positions.  Tr. 19.

Plaintiff assigns error to the ALJ's treatment of Plaintiff's sister's, Ms. Crossley, testimony.  Dkt. 25.  The ALJ stated that he adopted her testimony regarding Plaintiff's limitations, (Plaintiff could lift 15-30 pounds, stand for 30 minutes, walk 200 feet, sit for 30 minutes, could not squat or kneel well) except for her ultimate conclusion that Plaintiff could not work.  Tr. 21.  The ALJ did not err in his treatment of Ms. Crossley's testimony.  His RFC adopted Ms. Crossley's statement of Plaintiff's limitations.  Tr. 19.  He found that Plaintiff could lift and/or carry 20 pounds occasionally, and 10 pounds frequently, and sit, stand, and/or walk for a total of six hours in an eight hour day.  Id.  He provided a germane basis upon which to reject her claim that Plaintiff was unable to work.  He is the party ultimately charged with determining a claimant's ability to engage in work existing in significant numbers in the national economy.  SRR 96-8.

## C.   EVALUATION OF PLAINTIFF'S CREDIBILITY

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148

1   (9th Cir. 2001).

2        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

3   disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

4   what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>Dodrill v.

5   Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

6   the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." <u>Lester</u>, 81 F.2d at

7   834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v. Barnhart</u>, 318 F.3d

8   811, 818 (8th Cir. 2003).

9        In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

10  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

11  testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

12  also may consider a claimant's work record and observations of physicians and other third parties

13  regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

14       Plaintiff argues that the ALJ's credibility assessment was in error.  Dkt. 25.  Judge Arnold found

15  that the ALJ provided clear and convincing reasons upon which to discount Plaintiff's credibility including

16  the objective medical evidence, his daily activities, and inconsistent statements, including statements about

17  his drug use.  Dkt. 24, at 6-7.  Plaintiff attacks the ALJ's reasons as follows: 1) Dr. Brion's statement the

18  Plaintiff's "pain complaints were out of proportion to the history and physical exam findings" was taken

19  out of context, 2) his involvement on a single occasion in heavy lifting while working on a truck does not

20  show that his activities are inconsistent with his reported limitations, and 3) there is no evidence in the

21  record that Plaintiff was seeking drugs.  Dkt. 25.

22       As to Dr. Brion's statement that Plaintiff alleges was taken out of context, it appears that Plaintiff is

23  providing his own interpretation of the statement as well.  After noting that Plaintiff reported very limited

24  activities of daily living, Dr. Brion stated: "[t]he patient is independent with mobility.  He does not need to

25  use a cane.  He receives help with [activities of daily living] from his mother.  I am uncertain how much he

26  can actually do by himself.  His pain complaints are out of proportion to the history and physical exam

27  findings." Tr. 176.  The ALJ did not err in finding that Plaintiff was less than credible based on this entry

28  in the medical record.  Although Dr. Brion did not say that he felt Plaintiff was malingering, this entry

indicates that he did not find him entirely believable.  The ALJ is the party responsible for determining

credibility, resolving conflicts in the medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53

F.3d 1035, 1039 (9th Cir. 1995).   It was not error to find Plaintiff less than credible on this basis.  Plaintiff

attacks the ALJ's finding him less than credible based on his doing heavy lifting on one instance in 2002.

Dkt. 25, at 4-5.  This was a proper basis to find Plaintiff less than credible.  One of the key questions at

issue here is the amount Plaintiff can lift.  The ALJ's observation, that Plaintiff reported he could not lift

items over 10 pounds, but then does so, is a "clear and convincing" reason to discount Plaintiff's

credibility.  As to the third basis which Plaintiff attacks, that there is no evidence in the record that he was

seeking drugs and therefore should not be found to be less than credible in his report of the severity of his

limitations, the ALJ did not err.  The ALJ points to evidence in the record of Plaintiff being less than

forthright with his care giver regarding his use of illegal drugs.  Tr. 20.  An ALJ may rely on "inconsistent

statements" in making his credibility findings.  Smolen, at 1284.  In any event, the ALJ provided several

other reasons to find him not credible.  The fact that some of the reasons for discounting Plaintiff's

credibility were improper does not render the ALJ's credibility determination invalid, as long as that

determination is supported by substantial evidence in the record, as it is here.  Tonapetyan v. Halter, 242

F.3d 1144, 1148 (9th Cir. 2001).

####      D.      RFC ASSESSMENT

An individual's RFC is what that individual can still do despite his or her limitations.  SSR 96-8p.

The ALJ is responsible for determining a plaintiff's RFC.  Id.  The RFC assessment must be based on all of

the relevant evidence in the record, such as "medical history, medical signs and laboratory findings, the

effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source

statements, effects of symptoms, evidence from attempts to work, need for a structured living environment,

and work evaluations if available."  Id.

Plaintiff argues, in his Objections, that Judge Arnold erred in finding the ALJ's RFC assessment

was proper.  Dkt. 25, at 5-6.  Plaintiff argues that the ALJ failed to consider his pain, headaches, and

intermittent diarrhea.  Id.  Plaintiff argues the ALJ improperly addressed the medical evidence, particularly

the opinion of Dr. Brion.  Id.

Judge Arnold properly concluded that the ALJ's RFC assessment was supported by substantial

evidence in the record.  The record indicates that the ALJ did consider Plaintiff's pain in his RFC assessment when he found Plaintiff would need the ability to change positions to relieve discomfort.  Tr. 19.  Plaintiff has not shown that there is medical evidence in the record that Plaintiff had limitations as a result of his headaches and diarrhea which would impact his ability to do work on a "regular and continuing basis."  *See* SSR 96-8.  As stated above, the ALJ did not err in his treatment of the medical evidence.  The ALJ's RFC assessment was supported by substantial evidence in the record.

### E.   DETERMINATION REGARDING PLAINTIFF'S ABILITY TO PERFORM OTHER JOBS

In the last step of determining whether a claimant is entitled to benefits, the ALJ assesses the claimant's residual functional capacity, age, education, and work experience in order to determine if the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520 (a)(4)(v), 20 C.F.R. § 404.1520 (g).  The Commissioner has the burden at this step and must use a vocational expert to meet this burden if there is no other reliable evidence in the record of plaintiff's ability to perform specific jobs.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff argues that the ALJ's findings at step five of the sequential analysis was in error because they were based upon a faulty RFC.  Dkt. 25, at 6.  As above, the ALJ did not err in his RFC analysis. Accordingly, the Plaintiff's assignment of error is without merit.  The Report and Recommendation should be adopted and the administrative decision affirmed.

### III.   ORDER

Accordingly, it is hereby **ORDERED** that:

(1)   The Court **ADOPTS** the Report and Recommendation (Dkt. 24);

(2)   The administrative decision is **AFFIRMED;** and

(3)   The Clerk is directed to send copies of this Order to Plaintiff's counsel, Defendant's counsel and Magistrate Judge J. Kelley Arnold.

DATED this 15th day of April, 2008.

ROBERT J. BRYAN
United States District Judge